IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAITLIN HILBERG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-02177-L |
| | § | |
| SOUTHERN METHODIST | § | |
| UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Caitlin Hilberg is a former member of the Southern Methodist University (SMU) women's rowing team. In her live pleading, Hilberg alleges that SMU dedicated substantially more funding and resources to men's athletics than women's athletics in violation of Title IX and negligently failed to provide her with competent coaching, adequate supervision, and appropriate medical care. As a result of SMU's alleged acts and omissions, Hilberg suffered severe injuries in both of her hips. SMU disputes Hilberg's allegations and argues that her claims are barred by limitations. *See* Mot. Dismiss (ECF No. 14). The District Judge referred SMU's Motion to Dismiss Plaintiff's First Amended Complaint to the United States Magistrate Judge for findings and a recommendation. *See* Order (ECF No. 15). As explained below, the District Judge should **GRANT** SMU's Motion because Plaintiff's claims are time-barred.

## Background

Hilberg enrolled at SMU in the fall of 2012, and after being recruited by SMU, she joined the all-women's rowing team as a novice with no prior rowing experience. Am. Compl. at ¶¶ 73, 79 (ECF No. 12). Hilberg began participating in weekly practices with the novices, which included weight training, conditioning, and ergometer training meant to simulate being on the water. *Id.* at ¶¶ 79–81. Hilberg alleges that during a practice session in the spring of 2013, she felt a "pop in both of her hips" while using the ergometer, and she had trouble walking and moving around the following day. *Id.* at ¶ 81. According to Hilberg, the SMU coaches and trainers "dismissed her injuries," telling her that "she was just out of shape and needed better conditioning." *Id.* at ¶ 82. Hilberg underwent a functional assessment in September 2013, of which she never received the results, and throughout the Fall 2013 semester participated in rehabilitation sessions with an athletic trainer assigned to both the football and rowing teams. *Id.* at ¶¶ 84–85. But Hilberg alleges that her pain and symptoms persisted, and after getting an MRI in the fall of 2013, she discovered that she had suffered "catastrophic labral tears" in both hips and would need surgery. *Id.* at ¶ 86. Ultimately, Hilberg was medically disqualified from the women's rowing team and transferred out of SMU to another university after the Fall 2013 semester. *Id.* at ¶¶ 88–89, 94. Hilberg underwent surgery in May 2015 to repair the labral tear in her right hip. *Id.* at ¶ 90.

To support her claims of discrimination and negligence, Hilberg includes allegations describing the "'deal with it' culture of the rowing program," the

"unreasonable training and practice regimens" maintained by the SMU women's rowing program, the "history of hip injuries in the rowing program," the "substandard, second class athletic training and medical attention," dedicated to women's sports at SMU, and "SMU's history of non-compliance and unethical conduct." *See generally* Am. Compl. According to Hilberg, by requiring the female rowers to perform Olympic weightlifting techniques with little supervision, maintaining a culture that ignored injuries, retaliating against female rowers who were injured, and underprioritizing athletic trainer time with the female rowers, SMU provided unequal treatment and benefits in violation of Title IX and breached a duty to Hilberg, causing her injuries. *Id.* at ¶¶ 95–105.

Hilberg also alleges that "from 2009 until 2017, SMU Athletics administrators, sports medicine staff and coaches stood by as more than 40 women suffered hip injuries while participating on the rowing team." *Id.* at ¶ 109. These administrators, coaches, and medical staff allegedly knew as early as December 2012 that a condition called femoracetabular impingement or "FAI" predisposed female rowers to hip labral tears, but by August 2018 had still not implemented the recommended screening process to prevent hip injuries in female rowers. *Id.* at ¶¶ 50–53. Hilberg also alleges that SMU staff knew that there was an unusually high number of hip injuries among the female rowers as early as 2009. *Id.* at ¶ 111. In fact, Hilberg alleges, the functional assessment she underwent in September 2013—which was part of an audit of the female rowers due to the high incidence of hip injuries—revealed that she had FAI, but she "was never informed of the

3

finding." *Id.* at ¶¶ 87, 117. According to Hilberg, "SMU never shared the information it learned from the 2013 audit of the rowing program with the rowers." *Id.* at ¶ 117.

Although Hilberg alleges that she was injured in Spring 2013, *see id.* at ¶ 81, she claims that she did not learn of the facts, conditions, and circumstances that led her to inquire further into SMU's actions until October 2021, when she received a Family Educational Rights and Privacy Act (FERPA) notice from SMU informing her that her records had been subpoenaed in connection with another lawsuit involving SMU and the women's rowing program. *Id.* at ¶ 93. It was receiving this FERPA notice that led Hilberg to "investigate SMU's involvement in her hip injuries and ultimately learn of SMU's systematic failures involving the SMU Rowing team." *Id.*

Hilberg brings two causes of action against SMU: (1) gender discrimination under Title IX; and (2) negligence. She seeks monetary damages to compensate for "lost opportunities, loss of future educational and employment opportunities, physical injury, physical pain and suffering, and the denial of equal opportunity because of sex," and at minimum, nominal damages. *Id.* at ¶¶ 98, 105.

Hilberg initiated her lawsuit on September 29, 2023, and the parties shortly after jointly moved to stay the case pending the court's ruling on a Motion for Summary Judgment in a factually similar case involving other members of the SMU women's rowing team, *McGowan, et al. v. Southern Methodist Univ.*, 3:18-cv-00141-N. After Judge Godbey granted SMU's Motion for Summary Judgment

as to eight of the nine plaintiffs in *McGowan*, Hilberg filed her Amended Complaint, and SMU filed the pending Motion to Dismiss. Hilberg filed her Response (ECF No. 16), and SMU filed its Reply (ECF No. 17). This Motion is therefore fully briefed and ready for disposition.

## Legal Standard

To defeat a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do

not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

The ultimate question on a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376

6

(5th Cir. 2004). Stated another way, when a court considers a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

Limitations is an affirmative defense on which defendants bear the burden of proof. Fed. R. Civ. P. 8 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations[.]"). Nonetheless, a statute of limitations defense may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

## Analysis

The Court concludes that SMU's motion to dismiss should be **GRANTED.** It is clear from the face of Hilberg's Amended Complaint that both her negligence claim and her Title IX claim are barred by the applicable statute of limitations.[1]

---

[1] Because Hilberg's claims are time-barred, the Court pretermits consideration of SMU's arguments regarding the availability of emotional distress damages under

Specifically, Hilberg's claims accrued in Spring 2013, when she sustained her hip injury. Therefore, the two-year statute of limitations expired in Spring 2015, and her claims in this lawsuit, filed in 2023, are time-barred.

### 1. Hilberg's negligence claim is time-barred.

Applying the two-year statute of limitations for negligence claims recognized under Texas law, SMU contends that the statute of limitations began to run when Hilberg sustained her injuries in Spring 2013, and because she did not file this lawsuit until 2023, her negligence claim is time-barred and should be dismissed. *Id.* at 12.

Generally, a cause of action accrues, and limitations begin to run, when facts exist that authorize a claimant to seek judicial relief. *Levy v. UNUM Grp.*, 2023 WL 7442920, at *2 (5th Cir. Nov. 9, 2023) (citing *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542 (Tex. 2017)). Hilberg alleges that she injured her hips during rowing practice in Spring 2013 when she "felt a pop in both of her hips." Am. Compl. ¶ 81. The statute of limitations for a negligence claim under Texas law is two years. *See* Tex. Civ. Prac. & Rem. Ann. Code § 16.003; *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 488 (5th Cir. 2023). Therefore, absent tolling, the limitations period on Hilberg's negligence claim ran two years after her hip injury, in Spring 2015. But Hilberg argues that the discovery rule applies to

---

Title IX and whether Hilberg has sufficiently pleaded the required elements of her Title IX claim. *See* Mot. Dismiss 25–27.

delay accrual of her negligence claim, or alternatively, that SMU's fraudulent concealment of its own negligence tolls the statute of limitations. Resp. 13–20.

> a. *The discovery rule does not toll the statute of limitations because Hilberg knew the facts required for a cause of action at the time of her hip injury in Spring 2013.*

SMU argues that Hilberg is not entitled to the "discovery rule" exception to the statute of limitations that, under Texas law, determines that a claim of injury accrues when the plaintiff discovers or should have discovered the wrongful act and resulting injury, particularly when it is otherwise difficult for the injured party to learn of the act. *See* Mot. Dismiss 23–24; *Carpenter v. Boston Sci. Corp.*, 2019 WL 3322091, at *3 (N.D. Tex. July 24, 2019) (Lindsay, J.). SMU argues that the discovery rule is inapplicable here because "all facts required for a cause of action existed and were clearly known to Plaintiff in 2013, or, at the very latest, when she underwent surgery for her right hip in 2015." Mot. Dismiss 23. Hilberg responds that she had no knowledge of SMU's wrongful conduct, nor did she have any reason to inquire into SMU's conduct, until she received the FERPA notice in October 2021. Resp. 15. Moreover, Hilberg argues, it is "inappropriate to analyze the discovery rule at the motion to dismiss stage." *Id.*

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred, and the pleadings fail to set forth or raise some basis for tolling the statute. *Carpenter*, 2019 WL 3322091, at *4 (citing *Jones*, 339 F.3d at 366). The discovery rule is "a very limited exception to statutes of limitations." *Shell Oil Co. v. Ross*, 356 S.W.3d

924, 929 (Tex. 2011) (citation omitted). It applies when the nature of the plaintiff's injury is "inherently undiscoverable and the evidence of injury is objectively verifiable." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–66 (Tex. 2011) (citation omitted). The discovery rule "serves to defer the accrual of a cause of action until the plaintiff knew, or exercising reasonable diligence, should have known of the facts giving rise to the claim." *Gale v. Lucio*, 445 S.W.3d 849, 857 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). An injury is "inherently undiscoverable" when "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 847 (5th Cir. 2009). The inquiry focuses categorically on the type of injury alleged rather than on the circumstances of the particular case. *Beavers v. Met. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). But "the discovery rule does not apply—and hence the date of accrual is not postponed—simply because a claimant does not know the specific cause of the injury, the party responsible for it, the full extent of it, or the chances of avoiding it." *Id.* (quoting *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd.*, 146 S.W.3d 79, 93–94 (Tex. 2004) (cleaned up).

As the party asserting the statute of limitations defense, SMU must negate the discovery rule as a matter of law. *Schouest v. Medtronic, Inc.*, 13 F. Supp. 3d 692, 708 (S.D. Tex. 2014); *Carpenter*, 2019 WL 3322091, at *5. And "dismissal at the 12(b)(6) stage is proper only where it is evident from the complaint that the action is barred and the complaint fails to raise some basis for tolling." *Jaso v. The*

10

*Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011) (internal quotations and alterations omitted).

Here, it is evident from the face of Hilberg's Amended Complaint that her negligence claim is time-barred, and the pleading fails to raise a basis for tolling. On the facts alleged, Hilberg knew—or exercising reasonable diligence could have uncovered—the facts giving rise to her claim prior to the expiration of the limitations period. Hilberg alleges that she injured her hips in Spring 2013 and that she knew she had been injured at that time. Am. Compl. ¶ 81. Hilberg explains that she "felt a pop in both her hips" during a practice session in Spring 2013 and that she "could barely walk and had trouble getting to her classes" the following day. *Id.* Her pain and symptoms persisted, and after getting an MRI in Fall 2013, she discovered that she had suffered labral tears in both hips and would need surgery. *Id.* at ¶ 86. Hilberg also was medically disqualified from the women's rowing team before she transferred to another university after the Fall 2013 semester. *Id.* at ¶¶ 88–89, 94. Hilberg's injury is not the type of late-developing, latent injury that Texas courts categorize as inherently undiscoverable—indeed, "the discovery rule is inapplicable to situations in which the traumatic or injurious event causing personal injury is sudden and distinguishable, and the plaintiff knew that the injury occurred at the time the event occurred." *Parker v. Bill Melton Trucking, Inc.*, 2016 WL 7131204, at *3 (N.D. Tex. Dec. 5, 2016) (Fish, J.). Hilberg alleges that she knew in Spring 2013 that she had hurt her hips, and therefore, the discovery rule does not apply.

It is also clear from the face of Hilberg's Amended Complaint that, at the time of her injury, she was aware of facts that would lead her to conclude that SMU's alleged negligence in failing to provide her with competent coaching and adequate supervision caused her injuries. Hilberg alleges she participated in rowing practices in which "Strength and Conditioning Coach Amber Cortese . . . rarely supervised the rowers. Instead, she often simply told them to read the workout on the board and do the training by themselves." Am. Compl. ¶ 80. Hilberg also alleges that "unlike other athletic programs in which athletic trainers were present during practices, athletic trainers were not present during SMU rowing practices," that "SMU also employed unreasonable training volume" where "SMU rowers were consistently encouraged to increase the amount of weight they were lifting, even without any assurances that they were performing the Olympic Lifts correctly." *Id.* at ¶¶ 38, 39. These allegations indicate that Hilberg had sufficient information to file a negligence claim within the statutory period.

In arguing that the Court should apply the discovery rule here, Hilberg points to the *McGowan* case, currently pending before Judge Godbey, brought by nine former SMU rowers and alleging analogous facts and similar claims of negligence and discrimination under Title IX. *See McGowan*, 3:18-cv-00141-N. In February of this year, Judge Godbey granted SMU's motion for summary judgment, dismissing eight of the nine plaintiffs' claims as time-barred. *See McGowan v. Southern Methodist Univ.*, -- F.Supp.3d --, 2024 WL 455340 (N.D. Tex. 2024) (*McGowan II)*. But Judge Godbey declined to dismiss plaintiffs' claims

as time-barred at the Rule 12(b)(6) stage, concluding—without prejudice to reurge the same arguments at summary judgment—that plaintiffs had stated sufficient facts in their complaint to warrant application of tolling principles. *See McGowan v. Southern Methodist University (McGowan I)*, 2019 WL 142349, at *2 (N.D. Tex. Jan. 9, 2019). Hilberg urges the Court to follow Judge Godbey's lead and allow her case to survive SMU's Rule 12(b)(6) motion, arguing that "courts have found it inappropriate to analyze the discovery rule at the motion to dismiss stage." Resp. 15.

But, contrary to Hilberg's assertion, it is appropriate to analyze the discovery rule at the motion to dismiss stage. As noted, a statute of limitations defense may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred, and the pleadings fail to set forth or raise some basis for tolling the statute. *Carpenter*, 2019 WL 3322091, at *4. Indeed, Judge Godbey considered arguments pertaining to the discovery rule in his decision denying SMU's motion to dismiss in *McGowan*. And *McGowan* is not particularly instructive here because the facts and legal issues involved are distinguishable. The *McGowan* plaintiffs brought their claims in 2018 based on acts and omissions that allegedly occurred in 2014 through at least 2017, including some that allegedly occurred within the two-year statute of limitations period. Thus, Judge Godbey found "[i]t is not clear from the face of the Amended Complaint . . . whether Plaintiffs' claims are time barred." *McGowan I*, 2019 WL 142349, at *2. Here, despite attending SMU at roughly the same time as the

13

*McGowan* plaintiffs, Hilberg filed her case almost ten years after she left SMU, and there can be no question that the statute of limitations has expired on the acts and omissions that allegedly occurred in 2013 while she was a student there. *See* Am. Compl. ¶ 94 ("Plaintiff transferred from SMU after the Fall 2013 semester").

The *McGowan* plaintiffs also relied on the continuing tort and continuing violation doctrines to delay accrual of some of their claims.[2] Judge Godbey relied, at least in part, on these doctrines in concluding that the complaint should survive dismissal. *See McGowan I*, 2019 WL 142349, at *2 (denying SMU's motion to dismiss because plaintiffs alleged "that the continuing tort and continuing violation doctrines apply because SMU engaged in the same ongoing tortious and wrongful conduct that did not cease until Summer 2017, when SMU hired new rowing staff"). Hilberg does not rely on on either the continuing tort doctrine or the continuing violation doctrine in this case.

Judge Godbey also did not include a detailed analysis of how the discovery rule might apply in the context of the *McGowan* plaintiffs' injuries. He merely

---

[2] As Judge Godbey explained:

> The continuing tort doctrine states that a cause of action does not accrue until the defendant's tortious act ceases. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017). Similarly, the continuing violation doctrine stands for the proposition that if the violation does not occur at a single moment, but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation. *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733-34 (5th Cir. 1983).

*McGowan I*, 2019 WL 142349, at *2.

stated that "[i]n support of their discovery rule argument, Plaintiffs first allege that their claims did not accrue until September 2016, when Plaintiff Heyman first learned of the audit into the SMU's rowing program and SMU's subsequent failure to implement the recommended changes. Plaintiffs claim that they could not have reasonably discovered that SMU's wrongful conduct caused their injuries, especially given the misinformation SMU provided to Plaintiffs." *McGowan I*, 2019 WL 142349, at *2. Judge Godbey then concluded, without elaboration, that "Plaintiffs state sufficient facts regarding accrual of their claims and application of equitable tolling doctrines." *Id.* But he analyzed the issue in depth at the summary judgment stage, and, there, he concluded that the discovery rule did not apply to the *McGowan* plaintiffs' negligence claims because "the Challenged Plaintiffs were aware they suffered hip injuries in connection with their participation with SMU rowing at the time they incurred the injuries." *McGowan II*, 2024 WL 455340, at *5. Judge Godbey concluded that these injuries were "known, acute injuries, the causes of which laymen could discern contemporaneous with the injuries' occurrence," and therefore were not inherently undiscoverable. *Id.* Importantly, although Judge Godbey reached this conclusion at summary judgment, the relevant inquiry for application of the discovery rule is the *type* of injury, not the context of the injury—and the type of injury is as obvious at this stage as it would be if Hilberg's case proceeded to summary judgment. *Id.* at *4.

It is evident from the face of Hilberg's Amended Complaint that her negligence claim is time-barred. Accordingly, the District Judge should dismiss Hilberg's negligence claim.

> b. *The doctrine of fraudulent concealment does not apply because Hilberg has not alleged that SMU had a duty to disclose.*

SMU also argues that Hilberg has failed to raise a basis for tolling the statute of limitations based on fraudulent concealment. Mot. Dismiss 15–20. Specifically, SMU argues that Hilberg has failed to plead fraudulent concealment with the level of particularity required under Federal Rule of Civil Procedure 9(b) by neglecting to include the "who, what, when, where, and how" of the alleged misrepresentations and by failing to allege that SMU had a duty to disclose. *Id.* at 16. Hilberg does not respond to SMU's Rule 9(b) argument, but contends that fraudulent concealment tolls the statute of limitations due to SMU's active suppression of the truth and SMU's failure to disclose information that it was under a duty to disclose. Resp. 17. Hilberg argues that SMU owed her an informal fiduciary duty, or confidential duty, arising from a "moral, social, domestic, or purely personal relationship of trust and confidence." *Id.* at 19.

When a defendant fraudulently conceals the existence of a cause of action, the cause of action does not accrue and the statute of limitations is tolled until the claimant discovers or should have discovered the fraud. *Glover v. Raytheon Co.*, 2013 WL 5744361, at *4 (N.D. Tex. Oct. 23, 2013) (Lindsay, J.) (citing *Computer Assocs. Int'l v. Altai,* 918 S.W.2d 453, 455 (Tex. 1994)). Under Texas law,

16

fraudulent concealment requires that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff. *Mbome*, 2019 WL 13203320, at *9 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)). At the 12(b)(6) stage, "a plaintiff need not *prove* these fraudulent concealment elements"—but she must adequately allege them. *Id.* (emphasis in original). A plaintiff must satisfy Rule 9(b) to successfully plead fraudulent concealment. *McElvy v. Southwestern Correctional, LLC*, 2021 WL 4476762, at *3 (N.D. Tex. Sept. 29, 2021) (Godbey, J.).

But without a duty to disclose, mere concealment is not fraudulent concealment for purposes of tolling the statute of limitations. *Bridges v. Metabolife Intern., Inc.*, 119 F. App'x 660, 664 (5th Cir. 2005). Under Texas law, there is generally no duty to disclose in the absence of a confidential or fiduciary relationship. *CBE Grp., Inc. v. Heath*, 2020 WL 584620, at *9 (N.D. Tex. Feb. 6, 2020) (Lindsay, J.). An informal relationship giving rise to a duty to disclose may also be formed where one person trusts in and relies on another, whether from a moral, social, domestic, or purely personal relationship. *Id.*; *Redwood Resort Prop., LLC v. Holmes Co. Ltd.*, 2006 WL 3531422, at *8 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.).

Here, the Court determines that Hilberg has not sufficiently alleged that SMU was under a duty to disclose. Although Hilberg argues that she "was an 18-year-old college freshman with no rowing experience when she was recruiting [sic] by SMU novice coaches" and that "she was completely dependent on the SMU

athletic staff," Resp. 19, Hilberg does not provide any legal support for the proposition that the relationship between a student athlete and coach rises to the level of an informal fiduciary relationship or would otherwise trigger a duty to disclose in this context. *See McElvy*, 2021 WL 4476762, at *3. It its own research, the Court has been unable to locate any cases[3] within the Fifth Circuit where a coach–student athlete relationship gave rise to a duty to disclose. Indeed, "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Douglass v. Bleakley*, 900 F. Supp. 2d 736, 751 (N.D. Tex. 2012) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997).

Even if Hilberg could successfully argue that SMU owed her a duty to disclose, the Court's conclusion in Section 1.a. above that Hilberg could have uncovered, with reasonable diligence, facts giving rise to her negligence claim precludes the application of the fraudulent concealment doctrine. *Glover*, 2013 WL 5744361, at *4 ("The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances that would cause a reasonably prudent person to make inquiry, which if pursued, would lead to the discovery of the

---

[3] Texas law does not impose an informal fiduciary duty lightly. *Douglass v. Bleakley*, 900 F. Supp. 2d 736, 751 (N.D. Tex. 2012). Contexts in which an informal fiduciary relationship may arise include in an employer–employee relationship, *see Navigant Cons., Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007), or "when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Ins. Co. of N.A. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

concealed cause of action"). Here, Hilberg knew of her injury, the lack of attention from training staff and coaches and the lack of resources dedicated to female student athletes at SMU. For this reason, fraudulent concealment does not apply. *See Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 793 (W.D. Tex. 2018).

The Court concludes that Hilberg's negligence claim is time-barred and that neither the discovery rule nor the fraudulent concealment doctrine apply to toll the statute of limitations. The District Judge should therefore GRANT SMU's motion to dismiss as to Hilberg's negligence claim.

**2. Hilberg's Title IX claim is also time-barred.**

SMU raises similar arguments that Hilberg's Title IX claim is time-barred, contending that Hilberg had knowledge of the facts that would ultimately support her Title IX claim by the end of 2013 and therefore that the statute of limitations has run. Mot. Dismiss 13. Hilberg responds that she could not have reasonably known of the connection between her hip injuries and the discriminatory conduct of the SMU coaches and athletic department administrators until receiving the FERPA notice in October 2021, and therefore that her claim is not time-barred. Resp. 23.

"When a federal statute does not contain a limitations period (as is the case for Title IX and § 1983), the settled practice is to borrow an 'appropriate' statute of limitations from state law." *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015). The parties do not dispute that Title IX claims are subject to

the same two-year statute of limitations as negligence claims. *See id.* at 761; Mot. Dismiss 13; Resp. 20.

A Title IX claim accrues the moment the plaintiff becomes aware that she has suffered an injury or has sufficient information to know that she has been injured. *King-White*, 803 F.3d at 762. A plaintiff's awareness in this context encompasses two elements: (1) the existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. *Id.* The accrual rule applicable to Title IX claims "is, essentially, a 'discovery rule.'" *Id.* at 764.

In order to state a claim under Title IX, a plaintiff can allege facts indicating that the university "intended to treat women differently on the basis of their sex by providing them unequal athletic opportunity." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 882 (5th Cir. 2000); *see also Murphy v. Northside Ind. Sch. Dist.*, 2024 WL 1554057, at *1 (5th Cir. 2024) (per curiam). And for a Title IX claim to accrue, a plaintiff "need not know that she has a legal cause of action"—rather, she need "know only the facts that would ultimately support a claim." *King-White*, 803 F.3d at 762. Here, it is clear that Hilberg knew the facts that would support her claim of discrimination under Title IX at the time of her injury in Spring 2013, or at the latest, before she transferred out of SMU for the Fall 2013 semester. Hilberg includes specific allegations describing how female rowers at SMU were treated as "second class citizens" compared to male student athletes, such as "if a male, football or basketball team member was present in the training room with an SMU rowing athlete, the male athlete was consistently given priority of treatment over

20

the female SMU rowing athlete," Am. Compl. ¶ 62, "rowers' complaints of pain, including Plaintiff's complaints, were routinely dismissed or minimized by the coaching and training staff," but "male athletes were not similarly discounted," *id.* at ¶ 66, and "until 2016, the trainer assigned to rowing was also assigned to the football program, and often prioritized treatment for football players over rowers." *Id.* at ¶ 63. These facts, which Hilberg knew at the time of her injury in Spring 2013, would be sufficient for her to bring a Title IX claim against SMU or at the least, prompt her to investigate further the connection between her injury and SMU's alleged discriminatory treatment of female athletes. *McGowan II*, 2024 WL 455340, at *7 (finding the plaintiffs' firsthand knowledge of how SMU treated female and male athletes with regard to equipment, coaching, and medical care combined with knowledge that their injuries were related to participation in SMU's women's rowing program, would have led a reasonable person to investigate further into whether SMU's alleged Title IX violations caused their injuries); *see also Wilson v. Tex. Christian Univ.*, 2021 WL 4197263, at *5 (N.D. Tex. Sept. 15, 2021) (Lynn, J.) (concluding that plaintiffs' Title IX discrimination claims were time-barred because they were aware of their injuries and the connection between their injuries and the university's actions by a date within the two-year limitations period).

Hilberg's Title IX claims are therefore foreclosed for the same reasons discussed in Section 1.a. above—her injury was not inherently undiscoverable, and she does not sufficiently allege that, despite reasonable diligence, she could not

discover facts giving rise to her claim. The District Judge should therefore GRANT SMU's motion to dismiss Hilberg's Title IX claim as time-barred.

**Recommendation**

Because Hilberg's negligence and Title IX claims are time-barred, the District Judge should GRANT SMU's Motion to Dismiss.

**SO RECOMMENDED.**

August 9, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).