IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CAITLIN E. HILBERG,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:23-CV-2177-L** |
| § | |
| **SOUTHERN METHODIST** § | |
| **UNIVERSITY,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

On August 9, 2024, The Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 18) was entered, recommending that the court grant Southern Methodist University's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") (Doc. 14) and dismiss with prejudice as time-barred Plaintiff's two causes of action for alleged gender discrimination under Title IX and negligence. For the reasons that follow, the court **accepts** the Report (Doc. 18); **overrules** Plaintiff's objections (Doc. 22) to the Report; **grants** Defendant's Motion to Dismiss (Doc. 14); and **dismisses with prejudice** Plaintiff's alleged claims for gender discrimination under Title IX and negligence as time-barred.

**I.   Discussion**

Plaintiff Caitlin Hilberg ("Plaintiff" or "Ms. Hilberg") brought this action against Defendant Southern Methodist University ("Defendant" or "SMU") on September 29, 2023. The basis for both of Plaintiff's claims is that SMU dedicated substantially more funding and resources to men's athletics than women's athletics in violation of Title IX; negligently failed to provide her with competent coaching, adequate supervision, and appropriate medical care; and Defendant's alleged acts and omissions caused her to suffer severe injuries in both of her hips. On February

**Memorandum Opinion and Order – Page 1**

27, 2024, SMU moved to dismiss both claims as pleaded in Plaintiff's First Amended Complaint on the ground that they are barred by applicable statute of limitations.* The magistrate judge agreed that Plaintiff's claims are time-barred and should be dismissed with prejudice.

Plaintiff filed objections (Doc. 22) to the Report on September 16, 2024, in accordance with the court's order extending her objection deadline. In her objections, Plaintiff agrees that both of her claims are governed by a two-year statute of limitations period. She disagrees, however, with the magistrate judge's determination that both claims accrued in the Spring of 2013 when she was injured. She also contends that the magistrate judge erred in concluding that the equitable doctrines of fraudulent concealment and the discovery rule did not toll the accrual date of her claims. According to Plaintiff, fraudulent concealment and the discovery rule tolled the limitations period such that her claims did not accrue until October 2021 when she was notified that her educational records had been requested in connection with another lawsuit—*McGowan v. Southern Methodist University*, Case No. 3:18-CV-141-N.

Plaintiff contends her knowledge that she suffered hip injuries in the Spring of 2013 "does not equate to knowledge that SMU's actions caused the hip injuries," and "[s]he could not have realized that SMU was *knowingly* running a substandard women's rowing program, *knowingly* providing its female athletes with inequitable benefits, and *knowingly* concealing these facts from athletes" because these facts regarding causation "were entirely in the control of SMU and entirely out of [her] reach." Obj. 18 (emphasis by Plaintiff). For the same reasons, Plaintiff contends that Defendant's conduct was inherently undiscoverable such that the magistrate judge erred in not considering her fraudulent concealment allegations that support a finding that SMU owed her an

---

* In January 2024, SMU previously moved to dismiss both of Plaintiff's claims, as pleaded in the Original Complaint, based on the same reasoning—that they are time-barred. The earlier Motion to Dismiss (Doc. 10) was denied as moot in light of Plaintiff's First Amended Complaint. *See* Doc. 13.

**Memorandum Opinion and Order – Page 2**

informal fiduciary duty and, notwithstanding such a duty, actively suppressed the truth about its awareness that its female rowers had suffered a high rate of injuries, including hip labral tears.

In addition, Plaintiff argues that, in determining the date her claims accrued, the magistrate judge incorrectly focused on when she discovered the type or nature of her alleged hip injuries even though "discovering the nature of the injury requires **both knowledge of the wrongful act and the resulting injury**." Pl.'s Obj. 6 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) (emphasis by Plaintiff)). Plaintiff asserts that "accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury **and that it was likely caused by the wrongful acts of another**." *Id.* Plaintiff contends that, while she was aware of her hip injuries in Spring of 2013, she did not have knowledge of and could not have discovered the role Defendant's conduct played in her injuries before October 2021. Plaintiff, therefore, contends that dismissal of her claims based on Defendant's statute of limitations defense is premature and better left for resolution at the summary judgment stage or trial.

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred, and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted). Here, the magistrate judge determined, and the court agrees, that it is clear from the face of Plaintiff's First Amended Complaint that both of her claims are barred by the applicable statute of limitations, and her pleadings fail to raise a basis for tolling based on fraudulent concealment or the discovery rule.

Contrary to Plaintiff's assertion, the magistrate judge did not focus solely on her awareness in the Spring of 2013 that she had injured her hips during a practice session. The magistrate also determined, based on the allegations in the First Amended Complaint that, when Ms. Hilberg

**Memorandum Opinion and Order – Page 3**

injured her hips, she was "aware of facts that would lead her to conclude that SMU's alleged negligence in failing to provide her with competent coaching and adequate supervision caused her injuries." Report 12. Such facts includeh the following:

> [Ms.] Hilberg alleges she participated in rowing practices in which "Strength and Conditioning Coach Amber Cortese . . . rarely supervised the rowers. Instead, she often simply told them to read the workout on the board and do the training by themselves." Am. Compl. ¶ 80. [Ms.] Hilberg also alleges that "unlike other athletic programs in which athletic trainers were present during practices, athletic trainers were not present during SMU rowing practices," that "SMU also employed unreasonable training volume" where "SMU rowers were consistently encouraged to increase the amount of weight they were lifting, even without any assurances that they were performing the Olympic Lifts correctly." *Id.* at ¶¶ 38, 39. These allegations indicate that [Ms.] Hilberg had sufficient information to file a negligence claim within the statutory period.

*Id.*

Likewise, with respect to her Title IX claim, the magistrate judge determined that it is clear that Plaintiff was aware of facts supporting her claim of discrimination under Title IX at the time of her injury in the Spring of 2013, or at the latest, before she transferred out of SMU for the Fall 2013 semester:

> [Ms.] Hilberg includes specific allegations describing how female rowers at SMU were treated as "second class citizens" compared to male student athletes, such as "if a male, football or basketball team member was present in the training room with an SMU rowing athlete, the male athlete was consistently given priority of treatment over the female SMU rowing athlete," Am. Compl. ¶ 62, "rowers' complaints of pain, including Plaintiff's complaints, were routinely dismissed or minimized by the coaching and training staff," but "male athletes were not similarly discounted," *id.* at ¶ 66, and "until 2016, the trainer assigned to rowing was also assigned to the football program, and often prioritized treatment for football players over rowers." *Id.* at ¶ 63. These facts, which [Ms.] Hilberg knew at the time of her injury in Spring 2013, would be sufficient for her to bring a Title IX claim against SMU or at the least, prompt her to investigate further the connection between her injury and SMU's alleged discriminatory treatment of female athletes. [*McGowan v. Southern Methodist Univ.*, 2024 WL 455340, at *7 (N.D. Tex. Feb. 5, 2024) (*McGowan II*)] (finding the plaintiffs' firsthand knowledge of how SMU treated female and male athletes with regard to equipment, coaching, and medical care combined with knowledge that their injuries were related to participation in SMU's women's rowing program, would have led a reasonable person to investigate

> further into whether SMU's alleged Title IX violations caused their injuries); *see also Wilson v. Tex. Christian Univ.*, 2021 WL 4197263, at *5 (N.D. Tex. Sept. 15, 2021) (Lynn, J.) (concluding that plaintiffs' Title IX discrimination claims were time-barred because they were aware of their injuries and the connection between their injuries and the university's actions by a date within the two-year limitations period).
>
> [Ms.] Hilberg's Title IX claims are therefore foreclosed for the same reasons discussed in Section 1.a. above—her injury was not inherently undiscoverable, and she does not sufficiently allege that, despite reasonable diligence, she could not discover facts giving rise to her claim.

Report 20-22.

Plaintiff argues that this conclusion by the magistrate judge "fails to recognize that many of these facts were uncovered only through discovery in the *McGowan* case," whereas she "only became aware of these facts after she received a notice that her records had been subpoenaed." Obj. 12. She further asserts that this determination "is not one that can . . . or should . . . be made on the pleadings"; rather, "[t]he 'what' and 'when' related to the facts [she] knew or could have uncovered are questions for the fact finder." *Id.* The court disagrees.

It is true that Plaintiff's First Amended Complaint includes allegations regarding: (1) SMU's systematic failure to disclose to Plaintiff certain information such as its awareness that *other* female rowers had previously suffered the same or similar hip injuries; and (2) Plaintiff's lack of awareness that the September 2013 functional assessment of her was conducted as part of a comprehensive review of SMU's program in an effort to address the high number of hip injuries among female rowers. Thus, it is reasonable to conclude that Plaintiff would not have been aware of these types of facts in the Spring of 2013 when she first injured her hips while training.

The facts relied on by the magistrate judge, however, are limited to those that were obtained first-hand by Plaintiff while training in the Spring of 2013, or at the latest, up until the time she transferred out of SMU after the Fall 2013 semester. Thus, these are facts within her personal

**Memorandum Opinion and Order – Page 5**

knowledge. The court, therefore, agrees with the magistrate judge that Plaintiff knew enough at the time of her injury in the Spring of 2013 to bring her claims. Additionally, with respect to her Title IX claim, Plaintiff had sufficient information that would have led a reasonable person to investigate whether SMU's alleged violations and conduct caused her injuries.

Regarding Plaintiff's fraudulent concealment theory of tolling, the magistrate judge determined that this doctrine does not apply because Plaintiff has not sufficiently alleged that SMU had a duty to disclose:

> Although [Ms.] Hilberg **argues** that she "was an 18-year-old college freshman with no rowing experience when she was recruit[ed] by SMU novice coaches" and that "she was completely dependent on the SMU athletic staff," Resp. 19, [she] does not provide any legal support for the proposition that the relationship between a student athlete and coach rises to the level of an informal fiduciary relationship or would otherwise trigger a duty to disclose in this context.

Report 17-18 (citation omitted and emphasis added). The magistrate judge noted that she was unable to locate any cases within the Fifth Circuit in which "a coach–student athlete relationship gave rise to a duty to disclose." *Id.* at 18. The magistrate judge also noted that Plaintiff failed to respond to SMU's contention that she had not alleged with particularity the "who, what, when, where, and how" of the alleged misrepresentations or omissions as required by Federal Rule of Civil Procedure 9(b).

In her objections, Plaintiff continues to argue, as she did in her response to the Motion to Dismiss, that SMU had a "moral, social, domestic, or purely personal relationship of trust and confidence." Obj. 12. She also continues to argue that:

> In her complaint, [she] plausibly alleges that SMU owed her such an informal duty. [She] was an 18-year-old college freshman with no rowing experience when she was recruited by SMU novice coaches. She was completely dependent on the SMU athletic staff and had neither a reason to suspect nor the ability to inquire whether their actions caused her hip injuries. She trusted the SMU athletics staff and they betrayed her by suppressing the truth.

Obj. 12. Plaintiff contends that these allegations are sufficient to give rise to an informal duty, and the magistrate judge simply dismissed the notion that a coach-student athlete relationship could give rise to a duty to disclose.

The court has reviewed Plaintiff's First Amended Complaint and was unable to find any allegations similar to those above relied on by Plaintiff in responding to the Motion to Dismiss and objecting to the Report. This is perhaps the reason that the magistrate judge noted that Plaintiff merely argued these facts as opposed to pleading them. Plaintiff also fails to explain why such facts, if pleaded, are sufficient to give rise to a confidential or fiduciary relationship and corresponding informal duty, and, as before, she points to no legal authority supporting her contention that a coach-student athlete relationship could give rise to a confidential or fiduciary relationship triggering a duty to disclose. Although not the basis for the magistrate judge's recommended disposition of the Motion to Dismiss, the court notes that Plaintiff has yet to address SMU's contention that her pleadings do not satisfy Rule 9(b)'s particularity requirement.

Based on the foregoing, the court determines, as the magistrate judge did, that this is an appropriate case for dismissing Plaintiff's Title IX and negligence claims at the motion-to-dismiss stage based on Defendant's statute of limitations defense and the facts alleged in Plaintiff's First Amended Complaint.

## II.     Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court

considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiff did not request to amend her pleadings in responding to Defendant's Motion to Dismiss or in objecting to the magistrate judge's Report. Moreover, "[a] party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *United States ex rel. Willard v. Humana Health of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (citation omitted). Finally, as Ms. Hilberg has failed to respond to SMU's argument that her pleadings do not satisfy Rule 9(b)'s particularity requirement, she has abandoned or waived her right to do so. For these reasons and because Plaintiff had a prior opportunity to amend her pleadings after SMU moved the first time to dismiss her claims for statute of limitations reasons, the court determines that she has pleaded her "best case" such that further amendment, even if requested and allowed, would be futile and unnecessarily delay the resolution of this litigation. Accordingly, the court will not allow Plaintiff, who is represented by competent counsel, to further amend her pleadings.

### III.   Conclusion

Having considered the Motion to Dismiss, pleadings, file, record in this case, and Report, the court determines for the reasons explained that the findings and conclusions of the magistrate judge are correct, and it **accepts** them as those of the court. Accordingly, the court **overrules** Plaintiff's objections (Doc. 22) to the Report; **grants** Defendant's Motion to Dismiss (Doc. 14);

and **dismisses with prejudice** Plaintiff's alleged gender discrimination under Title IX and negligence as time-barred.

It is so ordered this 18th day of September, 2024.

                                      Sam A. Lindsay
                                    United States District Judge